O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| GARY RUSSELL LEMARR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-05-167 |
| | § | |
| JOHN DOE MARSHAL(S) UNITED | § | |
| STATES MARSHALS SERVICE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Now pending in the above-styled *Bivens* action is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. No. 34]. For the reasons stated herein, the Court **ORDERS** the Plaintiff to file a brief responding to Defendants' motion within twenty (20) days of this Order, stating which officers were responsible for failure to bring about his timely release.

### I.   FACTS AND PROCEDURE

#### A.   The Underlying Facts

On June 3, 2003, Plaintiff Gary Russell Lemarr ("Lemarr") was sentenced in the Southern District of Texas to a forty-five day term of imprisonment for aiding and abetting the illegal entry of an alien, in cause number L-03-2902-M. He was held in a facility operated by Corrections Corporation of America ("CCA") in Laredo, Texas, and set to be released on July 17, 2003. [Dkt. No. 1 at 4]. Lemarr claims that on July 17, 2003, he was taken to the prison's discharge area, but was later returned to his cell. He was allegedly informed that he could not be released because the prison had not received his release order. Lemarr further alleges that he spoke to various shift supervisors and

asked to be released, but such requests fell on deaf ears. Lemarr was eventually released on July 30, 2003, thirteen days after the expiration of his sentence. [*Id.* at 4-6].

Subsequent to his release on July 30, 2003, Lemarr was re-arrested on August 28, 2003, and charged in federal court in the Southern District of Texas with a new count of transporting an undocumented alien for financial gain, in cause number L-03-cr-1484-1. He pleaded guilty and was sentenced to a term of imprisonment of twenty-seven months, for which he was initially imprisoned at the Federal Correctional Institution in Three Rivers, Texas ("Three Rivers"). Three Rivers is run by the Bureau of Prisons ("BOP"). While incarcerated for this offense, Lemarr filed a habeas corpus action, styled *Lemarr v. United States*, No. L-04-cv-26, through which he sought to obtain thirteen days' credit towards his release. Lemarr initially appeared to have success in this endeavor when on February 25, 2004 District Judge Ellision granted a motion for 13 days' credit. [Case No. L-04-cv-26, Dkt. No. 3]. However, the Court later vacated that Order, stating:

> Petitioner's request is not cognizable as a habeas corpus claim. Petitioner is not entitled to custodial credit for the 13 days, because the unlawful detention occurred prior to the date of the offense for which he is now incarcerated. Moreover, Petitioner is not entitled to a correction of his current sentence because he failed to appeal that sentence.

[Case No. L-04-cv-26, Dkt. No. 8 at 1]; *see* 28 U.S.C. § 3585(b). The Court suggested that Lemarr might recover money damages via an appropriate civil action. [*Id.* at 2]. Lemarr administratively sought to obtain credit towards his release for the 13 days of allegedly unlawful incarceration, or alternatively, monetary damages. [Dkt. No. 34 Exs. A–E]. This effort was unsuccessful. [*Id.* Ex. F].

**B.     The Current Civil Action**

On July 15, 2005, Lemarr filed a *pro se* action against four "John Doe" defendants and two named prison officials. [Dkt. No. 1 at 2-3]. He seeks monetary compensation of $300 for each of the thirteen days he was allegedly unlawfully confined in July 2003. The Complaint specifically names the following "John Doe" defendants:

> **Defendant #1**: "John Doe" Marshal(s); United States Marshals Service, U.S. Courthouse; Laredo, Texas 78041.
>
> **Defendant #2**: "John Doe" Warden/Chief; Correction Corporation of America; 9998 S. Hwy. 83; Laredo, Texas 78046.
>
> **Defendant #3**: "John Doe" Warden (7/17/03); FCI-Three Rivers; P.O. Box 4000; Three Rivers, Texas 78071.
>
> **Defendant #4**: "John/Jane Doe" (ISM) (7/17/03); Inmate Systems Manager; FCI-Three Rivers; P.O. Box 4000; Three Rivers, Texas, 78071.

*Id.* Lemarr also named as Defendants Joe D. Driver ("Driver"), Warden of Three Rivers, and Doris Jones ("Jones"), Inmate Systems Manager at Three Rivers.

On March 23, 2006, the Court granted Lemarr's motion to proceed *in forma pauperis*, but denied Lemarr's Motion to Appoint Counsel. [Dkt. No. 8]. On August 23, 2007, the Court directed the Clerk of the Court to issue process, and the United States Marshal Service to serve process on the Defendants identified in Lemarr's complaint. [Dkt. No. 18].

Service was effected upon "'John Doe' Marshal(s), U.S. Marshals Service" on September 4, 2007 by serving Art Thomas, Supervisory Deputy U.S. Marshal at the Federal Courthouse in Laredo, Texas. [Dkt. No. 27]. The Marshal Service served process on "'John Doe' Warden/Chief, Correction Corporation of America" on September 4, 2007; the name and title of the person served does not appear on the

process receipt. [Dkt. No. 26]. The Marshal Service served process on "'John Doe' Warden (7/17/03)" on September 11, 2007 by mailing the petition and summons via certified mail to FCI-Three Rivers; P.O. Box 4000; Three Rivers, Texas 78071. [Dkt. No. 30]. The name of the person signing the receipt is illegible. The Marshal Service also served "'John/Jane Doe' (ISM 7/17/03)" on September 11, 2007 by mailing the petition and summons via certified mail to FCI-Three Rivers; P.O. Box 4000; Three Rivers, Texas 78071. [Dkt. No. 31]. The name of the person signing the receipt is also illegible, but matches that of the person signing for "'John Doe' Warden (7/17/03)." Finally, Driver and Jones were served by certified mail on September 11, 2007; the same person appears to have signed for their summons as for the John/Jane Doe Defendants at Three Rivers. [*See* Dkt. Nos. 29, 32].

No Defendant has filed an Answer to Lemarr's complaint, but on November 7, 2007, Defendants Jones and Driver moved the Court to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. No. 34]. The motion also requests that the claims against the four John Doe Defendants be dismissed.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the leader is entitled to relief." The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The standard of notice

pleading operates in conjunction with liberal discovery rules and summary judgment motions to ascertain genuine factual disputes and viable legal theories. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Where a pleading does not suffice to give a defendant proper notice of claims asserted against him, he may move for dismissal pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e). *Id.* at 514. When construing a complaint, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. If the complaint fails to allege an element essential to the plaintiff's claim, dismissal is warranted. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006). A *pro se* litigant's pleadings must be liberally construed, and will be held to a less stringent standard than pleadings drafted by a lawyer. *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (per curiam). When a defendant has asserted the affirmative defense of qualified immunity at the pleading stage, a Court may also order the plaintiff to file a responsive pleading which is "tailored" to the defense. *See Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc); Fed. R. Civ. P. 7(a)(7); Fed. R. Civ. P. 12(e).

### 1. *Bivens* Actions Generally

Lemarr seeks damages under the authority of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized a monetary remedy against federal agents who commit constitutional violations. Generally speaking, "a *Bivens* action is the federal analog" to suits brought against state officials pursuant to 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). The

Supreme Court has expanded the scope of *Bivens* actions to reach violations of the Eighth Amendment's prohibition on "cruel and unusual punishments," *see Carlson v. Green*, 446 U.S. 14, 19-20 (1980), as well as violations of the Due Process Clause of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 243-44 (1979).

A federal official may only be sued in a *Bivens* action in his individual capacity. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1294 n.12 (5th Cir. 1994). There is no doctrine of *respondeat superior* which would hold an official's supervisor answerable for the official's actions. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir 1998) (citing *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993)). However, a supervisor might be held liable if (1) he is personally involved in the acts causing a deprivation of a constitutional right, or (2) "he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Federal agencies and contractors may not be sued under *Bivens*. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72-73 (2001). Additionally, the United States does not have vicarious liability for constitutional torts committed by its officials because the United States has not waived sovereign immunity for such actions. *Brown v. United States*, 653 F.2d 196, 199 (5th Cir. 1981).

### 2. Illegal Incarceration as a Basis for *Bivens* Liability

A person subjected to illegal incarceration may bring a *Bivens* claim. *See Cronn*, 150 F.3d at 541. This includes a prisoner who has been held past the end of his sentence. *See Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968) ("There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence."), *cert. denied*, 396 U.S.

901 (1969); *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980) (hereinafter "*Douthit*"); *Jones v. City of Jackson*, 203 F.3d 875, 880-81 (5th Cir. 2000) (hereinafter "*Jones*"). Therefore, the pertinent inquiry under Rule 12(b)(6) is whether Lemarr has sufficiently alleged such a violation.

      Federal law does not conclusively establish whether a prisoner's constitutional right to be freed upon completion of a sentence is a due process right or is derived from the Eighth Amendment's "cruel and unusual punishments" clause. *See, e.g.*, *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1178 (N.D. Fla. 2002). The Fifth Circuit recently held that unlawful incarceration by a state actor gives rise to damages for a violation of the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *Jones*, 203 F.3d at 880-81. However, Jones, the plaintiff, was not held beyond the expiration of a lawfully imposed criminal sentence, but rather, was held on an invalid detainer and not brought before a magistrate for over nine months. *Id.* at 879-80. Because the wrong concerned misuse of "formal restraints imposed by the criminal process," Jones's due process right was violated, not his right to be free from cruel and unusual punishment. *Id.* at 879 (quotation omitted). In *Douthit*, an older case which is more analogous to Lemarr's in some respects, a prisoner was held by a county sheriff thirty days beyond the expiration of his sentence. 619 F.2d at 532. The Fifth Circuit found that such a deprivation was actionable under the Fourteenth Amendment right to due process. *Id.* However, the prisoner brought suit under § 1983, not *Bivens*, and the court did not consider whether the Eighth Amendment created an analogous right which could be asserted against a federal officer. *Id.*; *cf. Cannon v. Macon County*, 1 F.3d 1558, 1561-63 (11th Cir. 1993), *modified by* 15 F.3d 1022 (11th Cir. 1994).

Both *Jones* and *Douthit* concern actions by state officials. Because *Bivens* created a similar, but non-identical, remedy which lies only against federal actors, the Court will not consider *Jones* and *Douthit* precedent. *Cf. Hartman*, 547 U.S. at 254 n.2. The majority of federal courts which have considered the issue now before the Court have found that where a prisoner alleges that he was not released after serving a lawfully imposed criminal sentence, such action implicates the Eighth Amendment's punishments clause, not the right to due process. *See Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993); *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) ("[C]onfinement in a prison pursuant to a conviction but beyond the term of a sentence seems to us to be quintessentially punitive."); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001); *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986); *Mitchell v. N.M. Dep't of Corr.*, 996 F.2d 311 (Table), 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (unpublished); *see also McCurry*, 242 F. Supp. 2d at 1179-80; *Douglas v. Murphy*, 6 F. Supp. 2d 430, 431 (E.D. Pa. 1998); *Campbell v. Ill. Dep't of Corr.*, 907 F. Supp. 1173, 1179-80 (N.D. Ill. 1995); *Russell v. Lazar*, 300 F. Supp. 2d 716, 720 (E.D. Wis. 2004); *Banks v. York*, 515 F. Supp. 2d 89, 114-15 (D.D.C. 2007). Finding these cases persuasive, the Court concludes that Lemarr's claim arises under the Eighth Amendment.

A plaintiff alleging over-incarceration must show that the unlawful imprisonment resulted from deliberate indifference—regardless of whether the right originates in the Eighth, Fifth, or Fourteenth Amendment. *Malesko*, 534 U.S. at 73 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Jones*, 203 F.3d at 880-81; *McCurry*, 242 F. Supp. 2d at 1180; *Russell*, 300 F. Supp. 2d at 720. The Ninth and Third Circuits held that

a plaintiff must show the following three elements: (1) the defendant official knew of the risk that the plaintiff was being unlawfully held; (2) the official failed to act or took ineffectual action; and (3) such inaction or ineffective action bears a causal connection to the plaintiff's unjustified detention.  *Haygood*, 769 F.2d at 1354-55; *Moore*, 986 F.2d at 686; *Sample*, 885 F.2d at 1110; *see also Russell*, 300 F. Supp. 2d at 720.

### 3. The Defense of Qualified Immunity

A federal official sued in his individual capacity may raise the affirmative defense of qualified immunity.  *See Petta v. Rivera*, 143 F.3d 895, 898 (5th Cir.1998).  This doctrine shields the official as "an immunity from suit rather than a mere defense to liability[.]"  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  A court should endeavor to resolve the question of immunity early in the litigation.  *Id.* at 200.  This doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To evaluate immunity, a court first asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier*, 533 U.S. at 201.  The burden is on the plaintiff to demonstrate that the official violated a constitutional right.  *Thompson v. Upshur*, 245 F.3d 447, 456 (5th Cir. 2001).  If the plaintiff shows this, a court then asks whether the right was clearly established.  *Saucier*, 533 U.S. at 201.  The Court must answer whether a reasonable defendant would have clearly known that his conduct was unlawful in the situation he confronted.  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

If the plaintiff establishes a violation of a clearly established constitutional right, a court must next determine whether the official's alleged conduct was objectively

reasonable at the time of the incident. *See Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If the plaintiff has failed to show either that a constitutional violation occurred or that the right was clearly established at the time, this inquiry is pretermitted. *Nunez v. Simms*, 341 F.3d 385, 392 (5th Cir. 2003). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known" that the conduct violated a constitutional right. *Thompson*, 245 F.3d at 457 (emphasis in original). The "defendant's circumstances" include facts known to the defendant at the time, *id.*, and the particulars of the challenged conduct, *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). The defendant's subjective state of mind does not affect whether he is entitled to qualified immunity. *Id.* at 871 n.5. If defendants of "reasonable competence" might disagree, "immunity should be recognized." *Malley*, 475 U.S. at 341 (1986).

The Fifth Circuit has reasoned that it is appropriate to order a plaintiff to file a reply brief pursuant to Federal Rule of Civil Procedure 7(a)(7) when a defendant raises the defense of qualified immunity at the pleading stage. *See Schultea*, 47 F.3d at 1433-34. *Schultea* concerned a defense of qualified immunity in response to an action against a state official under the authority of 42 U.S.C. § 1983. However, *Bivens* and § 1983 are analogous causes of action, and in either action, the defense of qualified immunity shields officials not just from liability, but also from defending the suit. *Compare Saucier*, 533 U.S. at 200-01 (*Bivens* action), *with Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992) (§ 1983 action). Therefore, it stands to reason that a Court may also order a responsive pleading tailored to an invocation of the defense of qualified immunity in a *Bivens* action.

### B. The Pending Motion

Jones and Driver make a simple allegation: Lemarr has sued the wrong parties. They note that they are employed at Three Rivers, and are not the employees of CCA who wrongly held Lemarr the extra thirteen days in July 2003. [Dkt. No. 34 ¶¶ 3, 6-8]. Moreover, counsel for Jones and Driver, the United States Attorney, also requests dismissal of the four John/Jane Doe Defendants. [*Id.* ¶ 5]. Counsel further argues that all Defendants are entitled to qualified immunity. [*Id.* ¶ 9].

#### 1. Jones's & Driver's Motion

Jones and Driver are federal officials against whom a *Bivens* action would lie. However, it is not clear to the Court what exactly Lemarr alleges Jones and Driver did. It appears that he has sued Jones and Driver in part because they disrupted his effort to obtain custodial credit in the 2004 habeas corpus action. Specifically, Lemarr alleges that his apparently successful motion for 13 days' custodial credit was vacated only after Driver contacted Judge Ellison to inform him that Lemarr could not receive such credit. [Dkt. No. 1 at 7, 11]. Plainly, this would not constitute a violation of a constitutional right, as Driver at most brought a relevant statute to the attention of the district court. This only occurred after the allegedly illegal incarceration was *fait accompli*, and therefore only concerned whether Lemarr was entitled to a particular remedy—and he clearly was not entitled to thirteen days' custodial credit. *See* 28 U.S.C. § 3585(b). Insofar as Lemarr seeks to sue Jones and Driver for such actions, dismissal of this claim is proper because the allegations fail to allege a constitutional violation, and thus fail to state a claim upon which relief can be granted. *See Saucier*, 533 U.S. at 201.

However, Lemarr also alleges that while he was in the custody of CCA in July 2003, the BOP facility at Three Rivers was listed as the "actual satisfaction facility" for his 45-day sentence. Lemarr alleges that the unlawful detention could only have occurred with the oversight, approval, and "deliberate indifference" of Three Rivers' Inmate Systems Manager and Warden. [Dkt. No. 1 at 9-11]. Lemarr has presumably named such officers as John/Jane Doe Defendants because he does not know who held the position of Warden and Inmate Systems Manager at Three Rivers in July 2003. The proper defendants may in fact be Jones and Driver, if they were responsible for arranging for Lemarr's release on July 17, 2003. In other words, while Lemarr does not allege that Driver and Jones personally locked him away from July 17 to July 30, 2003, he may allege that they were personally involved by failing to issue his release order. *See Erickson*, 127 U.S. at 200. If these officers were supervisory employees who were in some manner responsible for bringing about Lemarr's release, they may be sued in a *Bivens* claim. *See Cronn*, 150 F.3d at 544; *Thompkins*, 828 F.2d at 304; *Banks*, 515 F. Supp. 2d at 115. This is not, as Jones and Driver contend, an attempt to invoke liability via the doctrine of *respondeat superior*. [Dkt. No. 34 ¶ 7].

To prevail on this theory at trial, Lemarr would eventually have to prove that Jones and Driver were responsible for bringing about his timely release, and were deliberately indifferent in failing to do so. *See Malesko*, 534 U.S. at 73; *Haygood*, 769 F.2d at 1354-55; *Moore*, 986 F.2d at 686; *Sample*, 885 F.2d at 1110. Lemarr is not required to prove his claims at this time; his allegations need only state a claim which is "plausible on its face." *See Twombly*, 127 S. Ct. at 1974. However, Lemarr must allege facts which, if proven, would show that Jones and Driver are not entitled to official

immunity. Therefore, pursuant to Federal Rule of Civil Procedure 12(e), the Court will require Lemarr to file a response in which he engages the defense of qualified immunity, and identifies which officials are responsible for failure to bring about his release on July 17, 2003. *Cf. Schultea*, 47 F.3d at 1433-34.[1]  Failure to do so will lead the Court to grant Jones's and Driver's motion to dismiss.

### 2. The John Doe Defendants

Counsel also asks that the four John Doe Defendants be dismissed for lack of personal jurisdiction. [Dkt. No. 34 ¶ 5]. This makes no sense. Personal jurisdiction is a due process requirement. *See, e.g.*, *Burger King v. Rudzewicz*, 471 U.S. 462 (1985). Thus, the question of whether a defendant may fairly be hailed before the Court can only be evaluated once the identity of the defendant is ascertained and the person is served. A fictional litigant simply has no due process rights to assert.

Nevertheless, Lemarr must exercise diligence in determining who such John and Jane Does are and what role they actually played. Lemarr acknowledges that discovery will be necessary to uncover the identity of the individuals he wishes to hold responsible. [Dkt. No. 1 ¶¶ 21-24].  While use of "John Doe" defendants is not favored, where appropriate, a litigant may use John Does as placeholders while diligently seeking the identity of the real parties, and then naming and serving such individuals. *See Colle v. Brazos County*, 981 F.2d 237, 243 & n.20 (5th Cir. 1993) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Lemarr is hereby admonished that failure to identify responsible parties may eventually result in dismissal of his remaining claims. *See id.*

---

[1] Because Lemarr did not respond to Defendants' motion, it would normally be deemed unopposed. *See* S.D. Tex. Local R. 7.4. The Court in its Order of March 23, 2006 admonished Lemarr that as a *pro se* litigant, "he must respond to all motions and pleadings filed by Defendants as prescribed by the local and federal rules." [Dkt. No. 8 at 4 n.2]. However, the Court finds that it is in the interest of justice to afford Lemarr one last opportunity to respond to Defendants' motion.

### III. CONCLUSION

For the aforementioned reasons, the Court hereby **ORDERS** Lemarr to file a response to Defendants' motion within twenty (20) days, in which he identifies which officers were responsible for failing to bring about his release on July 17, 2003.

IT IS SO ORDERED.

SIGNED this 15th day of May, 2008.

_____
Micaela Alvarez
United States District Judge